1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GINA LYONS and JERRY LYONS, on behalf
of themselves and all others
similarly situated,

      Plaintiffs,

  v.

BANK OF AMERICA, NA and BAC HOME
LOANS SERVICING, LP,

      Defendants.
_____/

No. 11-01232 CW

ORDER GRANTING IN
PART DEFENDANTS'
MOTION TO DISMISS

United States District Court
For the Northern District of California

Defendants Bank of America, NA (Bank) and BAC Home Loans
Servicing (BAC) (together, BOA) move to dismiss this putative class
action filed by Plaintiffs Gina and Jerry Lyons, husband and wife,
arising from Plaintiffs' attempt to modify their home loan
agreement.  Plaintiffs have filed an opposition.  The motion was
heard on June 23, 2011.  Having heard oral argument on the motion
and considered all the papers filed by the parties, the Court
grants the motion in part.

BACKGROUND

The Bank originates residential mortgages.   BAC is the Bank's wholly-owned subsidiary that services the Bank's loans.

The following facts are taken from the section of Plaintiffs' complaint entitled, "The Experiences of the Named Plaintiffs," which begins on page fifty two.[1]

On February 20, 2007, Plaintiffs purchased their home for $650,000, financing it with a home loan, secured by a deed of trust, from Countrywide Savings (CWS).   Sometime prior to December 2009, CWS became insolvent and many of its assets, including Plaintiffs' loan, were acquired by Defendants.   In late 2009, Plaintiffs determined that, due to the downturn in their construction supply business, they would be unable to continue making loan payments which, at the time, were $3,033 per month.   In December 2009, Plaintiffs contacted Defendants to request a loan modification.   Defendants informed Plaintiffs that they would be eligible for a modification only if they were three months in arrears in loan payments.   Because of this requirement, Plaintiffs did not make the next three payments on their loan.   Plaintiffs then contacted Defendants again requesting a loan modification and supplied Defendants with all the information they requested in conjunction with Plaintiffs' loan modification application.

Defendants informed Plaintiffs that Defendants would reduce

_____

[1]The first fifty-one pages of the complaint consist of allegations about the Emergency Economic Stabilization Act of 2008, the general practices of Defendants regarding documenting and processing foreclosures and congressional hearings and reports about foreclosure practices.

United States District Court
For the Northern District of California

the loan payments to $2,463.78 for a three month trial period, beginning in October 2010.  Before Plaintiffs could make the first $2,463.78 payment, Defendants informed Plaintiffs that Defendants had raised the payment to $3,824.14, which Plaintiffs could not afford.  Plaintiffs attempted to contact Defendants on multiple occasions to inquire why they had been summarily terminated from the loan modification program during the trial period before they had an opportunity to participate.  Defendants have never provided Plaintiffs with an explanation of the reason their promised modification was withdrawn.

In addition, Defendants incorrectly deemed Plaintiffs to be in default and initiated foreclosure proceedings against them before their first monthly payment was due under the modification program. The foreclosure sale was scheduled for April 2011 and is pending.[2] Plaintiffs filed this complaint on March 14, 2011, alleging the following causes of action against both Defendants: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud and intentional misrepresentation; (4) constructive fraud and negligent misrepresentation; (5) negligent processing of loan modification and foreclosure; (6) violation of California Business and Professions Code §§ 17500 et seq.; (7) violation of California Business and Professions Code §§ 17200 et seq.; (8) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1962 et seq.; and (9) violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act,

---

[2]Neither party discloses the status of the foreclosure proceedings.

1   18 U.S.C. § 1962(c), (d).

2                        LEGAL STANDARD

3        A complaint must contain a "short and plain statement of the

4   claim showing that the pleader is entitled to relief."  Fed. R.

5   Civ. P. 8(a).  Dismissal under Rule 12(b)(6) is appropriate only

6   when the complaint does not give the defendant fair notice of a

7   legally cognizable claim and the grounds on which it rests.  Bell

8   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering

9   whether the complaint is sufficient to state a claim, the court

10  will take all material allegations as true and construe them in the

11  light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan,

12  792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is

13  inapplicable to legal conclusions; "threadbare recitals of the

14  elements of a cause of action, supported by mere conclusory

15  statements," are not taken as true.  Ashcroft v. Iqbal, ___ U.S.

16  ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at

17  555).

18       When granting a motion to dismiss, the court is generally

19  required to grant the plaintiff leave to amend, even if no request

20  to amend the pleading was made, unless amendment would be futile.

21  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

22  F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment

23  would be futile, the court examines whether the complaint could be

24  amended to cure the defect requiring dismissal "without

25  contradicting any of the allegations of [the] original complaint."

26  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

27

28                                  4

DISCUSSION

I. Contract Claims

In their complaint, Plaintiffs assert that Defendants breached three contracts: the original loan agreement, the loan modification agreement and a binding settlement agreement.[3]

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach. Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004). Rule 8 of the Federal Rules of Civil Procedure provides that, in alleging the existence of a contract, a plaintiff may set forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect. Ramirez v. GMAC Mortg., 2010 U.S. Dist. LEXIS 5377, *5 (C.D. Cal.); Securimetrics, Inc. v. Hartford Cas. Ins. Co., 2005 U.S. Dist. LEXIS 44893, *5-6 (N.D. Cal.).

A. Loan Agreement

Plaintiffs allege that they entered into a residential loan agreement with Defendants that provided that Defendants could foreclose only if Plaintiffs were in default on their loan payments, and that Defendants breached the agreement by foreclosing when the loan was not in default.

Defendants argue that Plaintiffs fail to allege that they

---

[3]In their opposition to the motion to dismiss, Plaintiffs clarify that their breach of contract claim does not include a claim based upon a binding settlement agreement. Opposition at 6. Therefore, this claim is dismissed with prejudice.

**United States District Court**
For the Northern District of California

actually performed their obligation under the loan agreement to make all payments as they came due before Defendants initiated foreclosure proceedings.

In their opposition, Plaintiffs respond that ¶ 190 of their complaint says that "they were current on their mortgage payments and at the point they realized the deterioration in their financial condition but before ever defaulting, contacted BOA to request a loan modification." Opp. at 8. However, ¶ 190 states, "In late 2009, Plaintiffs determined that due to the downturn in their construction supply business they would be unable to continue making mortgage payments." The allegation does not indicate that Plaintiffs were up-to-date on their loan payments before Defendants initiated foreclosure proceedings.

Plaintiffs also argue that their failure to perform should be excused because it was induced by Defendants, who told Plaintiffs they would not be eligible for a loan modification unless they were three months in arrears. However, the fact that Defendants made this statement is insufficient to excuse Plaintiffs' default.

Thus, Defendants are correct that the complaint fails to allege Plaintiffs' performance, an element of a breach of contract claim. It follows that, if Plaintiffs were in default on their loan, Defendants did not breach the loan agreement by initiating foreclosure proceedings.

Therefore, this claim is dismissed. Dismissal is with leave to amend to remedy the deficiency addressed above, if Plaintiffs truthfully can do so.

United States District Court
For the Northern District of California

B. Loan Modification Agreement

Defendants argue that Plaintiffs have failed to allege the existence of a loan modification contract by any of the means provided by Rule 8.  Plaintiffs respond that, although they have not attached such a contract or cited it verbatim, a contract is stated by their allegations that they were offered entry into the loan modification program only if they went into arrears on their loan, that they went into arrears as requested, that they provided all the documents Defendants requested, that they were accepted into the program's trial period and given a new payment amount, but that before they could perform, Defendants breached by raising the payment amount.  In their opposition, Plaintiffs argue that their complaint alleges that "there was a written agreement to modify the loan amount for three months as a trial period, and permanently after that."  However, Plaintiffs do not cite the paragraph where this allegation appears, and the Court does not find an allegation of a written agreement in the complaint.

Most of the cases cited by Plaintiffs are inapplicable because they address written agreements.  See e.g., Jackson v. Ocwen Loan Serv., 2011 U.S. Dist. LEXIS 12816, *2 (E.D. Cal.) ("Plaintiffs entered into a written agreement with Defendant"); Walters v. Fid. Mortg. of Cal., 730 F. Supp. 2d 1185, 1200 (E.D. Cal. 2002) (finding allegations of breach of obligations under written deed of trust stated breach of contract claim, but dismissing breach of contract claims based on forbearance and loan reinstatement agreements which were not attached to complaint or adequately described in complaint); Bosque v. Wells Fargo Bank, __ F. Supp. 2d

7

__, 2011 WL 394725, *3 (D. Mass.) (each plaintiff signed and returned to defendant a Trial Period Plan Agreement and performed the terms of the agreement); Marques v. Wells Fargo Home Mortg., Inc., 2011 WL 2005837, *3-4 (E.D. Cal.) (complaint alleged specific terms of loan modification written in an email); Turbeville v. JPMorgan Chase Bank, SA, 2011 U.S. Dist. LEXIS 42290, *4 (C.D. Cal.) (defendant entered into written loan modification agreements with each plaintiff).

Citing Ansanelli v. JPMorgan Chase Bank, N.A., 2011 WL 1134451 (N.D. Cal.), Plaintiffs argue that, even if they failed to allege a valid contract, they allege a valid oral modification of the original loan agreement under California Civil Code § 1698.

California Civil Code § 1698 provides, in relevant part:

> (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

> (c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.

The statute of frauds, California Civil Code § 1624, provides, in relevant part:

> (a) The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by the party's agent:

> . . .

> 3. An agreement . . . for the sale of real property, or of an interest therein . . .

Ansanelli held that an oral loan modification was valid because California Civil Code § 1698 (b) and (c) provide an

8

United States District Court
For the Northern District of California

exception to the statute of frauds, as long as there is
consideration for the modification and it is executed by the
promisee. Id. at *3-4. The court relied upon Raedeke v. Gibralter
Sav. and Loan Ass'n, 10 Cal. 3d 665 (1974). Addressing California
Civil Code § 1968 (b) and (c), that case explained that "if there
exists sufficient consideration for an oral modification agreement,
then full performance by the promisee alone would suffice to render
the agreement 'executed' within the meaning of section 1698." Id.
at 673. Ansanelli also relied on California contract law holding
that consideration is adequate if "some small additional
performance is bargained for and given . . . [it is sufficient] if
the act or forbearance given or promised as consideration differs
in any way from what was previously due." Ansanelli, 2011 WL
1134451 at *4. Ansanelli also noted that consideration may be
either a benefit conferred upon the promisor or a detriment
suffered by the promisee. Id.

The Ansanelli plaintiffs alleged that the defendant "dragged
[them] along through a slow, frustrating, redundant and fraudulent
modification process, . . . continually demanded piecemeal and
duplicative paperwork, indicated that the file was both complete
and incomplete and that the process was stalled and proceeding."
Id. at *1. The plaintiffs also alleged that they made payments
under a trial modification plan from June 2009 through February
2010, at which time the defendant denied the loan modification
because their file was missing critical documents. Id. They also
alleged that the defendant benefitted from the loan modification by
receiving incentive payments from a government program. Id. at 4.

9

**United States District Court**
For the Northern District of California

The Ansanelli court found that this sufficiently alleged consideration because the plaintiffs had expended time and energy in making financial disclosures in furtherance of the modification agreement, which they would not have been required to do under the original agreement, and the defendant benefitted by receiving incentive payments for modifying loans. Id. at 4.

Plaintiffs argue that they sufficiently allege consideration in ¶ 194 of their complaint. This paragraph states, "Plaintiffs supplied Defendants with all information requested in conjunction with their application for a loan modification."

Although this allegation is sparse, following the reasoning in Ansanelli, it is sufficient to show that Plaintiffs provided consideration for the loan modification agreement. Because Defendants allegedly breached the modification agreement before Plaintiffs could perform, Plaintiffs could not have executed the modification agreement. And, Defendants would benefit from the modification agreement by saving the time and cost of undertaking foreclosure proceedings.

Therefore, Plaintiffs have alleged a claim for breach of an oral loan modification agreement. Defendants' motion to dismiss this claim is denied.

II. Breach of the Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995). The covenant

10

**United States District Court**
For the Northern District of California

thus prevents a contracting party from taking an action which, although technically not a breach, frustrates the other party's right to the benefit of the contract.  <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1153 (1990).  "Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'"  <u>Id.</u>

In the complaint, Plaintiffs allege that Defendants breached the implied covenant by "failing to take reasonable measures to insure that they collected and/or attempted to collect the proper sums from Plaintiffs . . .; by failing to make good faith efforts to provide the loan servicing functions owed to Plaintiffs . . . in connection with their review and retention of documentation, including loan modification applications; [and] by initiating foreclosure proceedings without cause . . . ."  Comp. at ¶ 234.  Plaintiffs also point to their allegations that Defendants breached the covenant by inducing Plaintiffs to default before applying for a loan modification, by changing the terms of the loan modification before Plaintiffs could make their first payment and by failing to communicate with or supervise foreclosure employees, so that Plaintiffs were not protected from foreclosure activity during the loan modification process.

The breach of covenant claim based on the loan agreement fails for a number of reasons.  First, many of Plaintiffs' allegations are general statements that do not apply to their loan.  Second, the allegations do not state actionable conduct on Defendants' part.  For instance, the fact that Defendants told Plaintiffs that

11

United States District Court
For the Northern District of California

they would not be eligible for a loan modification unless they were three months in arrears would not frustrate Plaintiffs' rights to the benefits under the loan agreement.  Further, Defendants had cause to initiate foreclosure proceedings if Plaintiffs were in default on their loan.

However, Plaintiffs have alleged the existence of a loan modification agreement, and the allegation that Defendants changed the terms of the agreement before Plaintiffs could perform is sufficient to state a claim for breach of the implied covenant.

Defendants' motion to dismiss the breach of the implied covenant claim based on the loan modification agreement is denied. The motion to dismiss the breach of the implied covenant claim based on the loan agreement is granted.  Dismissal is with leave to amend to correct the noted deficiencies, if Plaintiffs truthfully can do so.

III. Fraud, Intentional Misrepresentation and Negligent Misrepresentation

To state a claim for fraud, also known as intentional misrepresentation, a plaintiff must plead "'(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1096 (9th Cir. 2007) (quoting Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003)); see generally Cal. Civ. Code §§ 1709-10.  The elements of negligent misrepresentation are similar to those for intentional misrepresentation, except that a plaintiff need not plead knowledge of falsity; instead, negligent

United States District Court
For the Northern District of California

misrepresentation requires that the defendant made a representation "without reasonable ground for believing it to be true." <u>Glenn K. Jackson, Inc. v. Roe</u>, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, <u>id.</u> at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." <u>In re GlenFed, Inc., Secs. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).  Scienter may be averred generally, simply by saying that it existed.  <u>Id.</u> at 1547; <u>see</u> Fed. R. Civ. Proc. 9(b).

Plaintiffs argue that Rule 9(b)'s heightened pleading standard does not apply because they are alleging state law claims. However, Rule 9(b)'s particularity requirement applies to state law claims for fraud.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003).  Although a federal court applies state law to determine whether the elements of fraud have been plead sufficiently to state a cause of action, it applies Rule 9(b) to determine if the circumstances of the fraud have been stated with particularity.  <u>Id.</u>

Plaintiffs argue that they meet Rule 9(b)'s particularity requirement by alleging (1) that Defendants' statement that

13

**United States District Court**
For the Northern District of California

Plaintiffs had to be three months in arrears before they could apply for a loan modification was false, (2) that Defendants knew it was false but said it to induce Plaintiffs to default on their loan so Defendants would reap greater fees in the servicing of the loan, and (3) that Plaintiffs relied on Defendants' misrepresentation to their detriment.

These allegations are insufficient to meet Rule 9(b)'s heightened pleading requirement. Plaintiffs have not alleged who made this statement, what was false or misleading about it and why it was false. Plaintiffs also have not alleged justifiable reliance. If Plaintiffs stopped making their loan payments after Defendants told them they had to be three months in arrears to be eligible for the program, they could only reasonably have expected to be eligible to start the application process; Plaintiffs do not allege that Defendants told them they would qualify for a loan modification if they were three months in arrears.

Thus, the claims for fraud and intentional and negligent misrepresentation are dismissed with leave to amend to correct the noted deficiencies, if Plaintiffs truthfully can do so.

IV. Constructive Fraud

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." <u>Salahutdin v. Valley of California, Inc.</u>, 24 Cal. App. 4th 555, 562 (1994). Generally, "constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." <u>Id.</u>

14

Plaintiffs acknowledge that, ordinarily, a lender does not owe a fiduciary duty of care to a borrower, but argue that there is a duty of care owed by a lender modifying a loan through the federal Home Affordable Modification Program (HAMP), to which Defendants subscribed.  Plaintiffs cite two cases for this proposition.  In Ansanelli, the court stated that a lender who offered the plaintiffs an opportunity for a loan modification went beyond the domain of the usual money lender, and this created a duty of care on the part of the lender.  2011 WL 32350, at *7.  In Packer v. SN Servicing Corp., 2008 U.S. Dist. LEXIS 45380, *7-8 (D. Conn.), the court held that a loan servicer had a duty to exercise care in noticing and recording the assignment of the borrower's loan, particularly when the borrower repeatedly asked for confirmation of ownership of his mortgage.

However, the weight of authority is against finding a fiduciary relationship or duty of care between Defendants and Plaintiffs.  In James v. Litton Loan Servicing, LP, 2011 U.S. Dist. LEXIS 17404, *2, 10-11 (N.D. Cal.), the court held that there was no fiduciary relationship between the borrower and the loan servicer, even though the borrower had executed a loan modification agreement with the servicer.  In Qureshi v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 21843, *4, 22 (N.D. Cal.), the court dismissed a constructive fraud claim due to lack of fiduciary duty where the plaintiff had alleged that the defendant told him to apply for a loan modification but then foreclosed rather than grant the modification.  See also, Bridgeman v. United States, et al., 2011 U.S. Dist. LEXIS 6059, *52 (E.D. Cal.) (in relation to claims

United States District Court
For the Northern District of California

based on HAMP, holding that there was no fiduciary relationship between borrower and lender); <u>Padilla v. One West Bank</u>, 2010 U.S. Dist. LEXIS 134387, *10 (N.D. Cal.) (dismissing negligence claim on ground that loan servicer did not owe borrower a duty of care).

Based on this authority, Plaintiffs' constructive fraud claim is dismissed for failure to allege that Defendants owed them a duty of care or that there was a fiduciary relationship between Defendants and Plaintiffs.  This claim is dismissed without leave to amend, because it does not appear that Plaintiffs could correct this deficiency.

V. Negligent Processing of Loan Modification and Foreclosure

Plaintiffs allege that Defendants owed them a duty of reasonable care in the processing and determination of their loan modification application and the processing of their foreclosure and that Defendants breached this duty by failing properly to evaluate Plaintiffs' loan modification application and properly to process their foreclosure.

As discussed above, the weight of authority holds that a lender or loan servicer owes no duty of reasonable care to a borrower.  Therefore, Defendants' motion to dismiss this claim is granted.  Dismissal is without leave to amend because Plaintiffs could not cure this deficiency with additional allegations.

VI. False Advertising

Plaintiffs bring a claim under section 17500 of the California Business and Professions Code, which prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  A false advertising

United States District Court
For the Northern District of California

claim under this section may be brought "where the advertising complained of is not actually false, but thought likely to mislead or deceive, or is in fact false." Day v. AT&T Corp., 63 Cal. App. 4th 325, 332 (1998). Section 17500 proscribes "not only those advertisements which have deceived or misled because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." Id. If a claim under § 17500 sounds in fraud, it must be plead with particularity under Federal Rule of Civil Procedure 9(b). Tayag v. Nat'l City Bank, 2009 U.S. Dist. LEXIS 33260, *6 (N.D. Cal.); Janda v. T-Mobile, USA, Inc., 2008 U.S. Dist. LEXIS 93399, *15-18 (N.D. Cal.).

Plaintiffs' false advertising claim rests on the following allegations. Defendants engaged in a public advertising campaign marketing their participation in HAMP and other loan modification and hardship assistance programs, touting their commitment to help customers prevent default and foreclosure through loan modifications and boasting of their success in helping customers obtain such modifications. Comp. ¶ 258. However, Defendants failed to disclose the following risks associated with the trial modification period: (1) a home owner might not be eligible to participate in the programs; (2) Defendants might report the modified payments as a default or late payments to credit bureaus, thus destroying a home owner's credit history; (3) a home owner could be rejected from the trial modification period at any point, which could result in an immediate demand for a balloon payment plus late and delinquency fees. Comp. ¶ 259. Contrary to the advertising that appeared on Defendants' website, and elsewhere,

17

United States District Court
For the Northern District of California

the most common effect of attempting to modify a loan serviced by Defendants was that borrowers would be left in a worse position than before.  Comp. ¶ 260.  Defendants' advertisements and marketing representations were false, misleading, and likely to deceive the public by falsely representing the HAMP and trial modification programs' benefits while concealing the risks involved.  Comp. ¶ 261.  In making the statements, Defendants knew or should have known that they were untrue and misleading.  Comp. ¶ 262.

Plaintiffs argue that these allegations, along with the screenshots of Defendants' website advertising submitted with their complaint, demonstrate that Defendants made false statements that were likely to deceive homeowners.  However, the allegations and screenshots fail to identify any false statements.  Plaintiffs fault the advertising for failing to disclose that they may not be eligible to participate in the program.  However, the screenshots state that there are eligibility requirements to participate in the modification programs and that homeowners may be eligible for a loan modification; they do not falsely state that all homeowners are eligible.  Furthermore, no homeowner could reasonably assume, based on the screenshots and Plaintiffs' allegations, that everyone was eligible.

This claim is dismissed.  Leave to amend is granted to add allegations to correct the deficiencies noted above, if Plaintiffs truthfully can do so.

**United States District Court**
For the Northern District of California

1    VII. Unfair Competition

2        A. Legal Standard

3         The California Unfair Competition Law (UCL), Cal. Bus. &

4    Prof. Code § 17200 <u>et seq.</u>, prohibits "any unlawful, unfair or

5    fraudulent business act or practice and unfair, deceptive, untrue

6    or misleading advertising."  Because § 17200 is written in the

7    disjunctive, it establishes three types of unfair competition.

8    <u>Davis v. Ford Motor Credit Co.</u>, 179 Cal. App. 4th 581, 593 (2009).

9    Therefore, a practice may be prohibited as unfair or deceptive

10   even if it is not unlawful and vice versa.  <u>Podolsky v. First</u>

11   <u>Healthcare Corp.</u>, 50 Cal. App. 4th 632, 647 (1996).

12       1. Unlawful Business Practice

13       An unlawful business practice includes anything that can be

14   called a business practice and that is forbidden by law.  <u>Ticconi</u>

15   <u>v. Blue Shield of California Life & Health Ins.</u>, 160 Cal. App. 4th

16   528, 539 (2008).  Any federal, state or local law can serve as a

17   predicate for an unlawful business practice action.  <u>Smith v.</u>

18   <u>State Farm Mut. Automobile Ins. Co.</u>, 93 Cal. App. 4th 700, 718

19   (2001).  Thus, the UCL incorporates violations of other laws and

20   treats them as unlawful practices independently actionable under

21   the UCL.  <u>Id.</u>; <u>Chabner v. United of Omaha Life Ins. Co.</u>, 225 F.3d

22   1042, 1048 (9th Cir. 2000); <u>Cel-Tech Communs., Inc. v. Los Angeles</u>

23   <u>Cellular Telephone Co.</u>, 20 Cal. 4th 163, 180 (1999).

24       2. Unfair Business Practice

25       The definition of an unfair business practice in consumer

26   cases has been unsettled in light of the California Supreme Court

27   ruling in <u>Cel-Tech</u>, which criticized previous definitions as too

28
                                    19

United States District Court
For the Northern District of California

amorphous and provided a definition in the context of an antitrust case.  Davis, 179 Cal. App. 4th at 594; Juarez v. Jani-King of California, Inc., 273 F.R.D. 571, 585 (N.D. Cal. 2011).  In Cel-Tech, the California Supreme Court left open the definition of unfairness in consumer cases and has not yet addressed the issue. Davis, 179 Cal. App. 4th at 594.  Where the state's highest court has not spoken on an issue, the task of the federal court is to determine how the state high court would decide it.  Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir. 1986).  The federal court must look to decisions of state intermediate appellate courts for guidance as to how the high court would decide.  Id.

   After Cel-Tech, California appellate courts have applied three different approaches for determining unfairness in consumer cases.  Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010).  The first approach determines whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers by weighing the utility of the defendant's conduct against the seriousness of the harm to the alleged victim.  Id. at 257; Davis, 179 Cal. App. 4th at 595.  The second approach requires that the unfairness claim be defined in connection with a legislatively declared public policy that is "tethered" to specific constitutional, statutory, or regulatory provisions.  Id. at 595-96.  The third approach applies the three factors constituting unfairness in the Federal Trade Commission Act:  (1) the injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be

20

United States District Court
For the Northern District of California

one that the consumer could not reasonably have avoided.  <u>Id.</u> at 597-98.

In <u>Camacho v. Automobile Club of Southern California</u>, 142 Cal. App. 4th 1394, 1402 (2006), the court concluded that <u>Cel-Tech</u> overruled the first approach to unfairness because "definitions that are too amorphous in the context of anticompetitive practices are not converted into satisfactorily precise tests in consumer cases." <u>Camacho</u> also criticized the second approach, which <u>Cel-Tech</u> adopted for use in antitrust cases.  <u>Id.</u> at 1402-03.  <u>Camacho</u> reasoned that consumer cases are different from antitrust cases and that defining unfairness in connection with a public policy that is tethered to specific constitutional, statutory or regulatory provisions did not comport with the broad scope of the UCL.  <u>Id.</u>  <u>Camacho</u> also found that this approach did not support the principle underlying the UCL, that a practice can be unfair even if it is not unlawful.  <u>Id.</u> (citing <u>Cel-Tech</u>, 20 Cal. 4th at 180).  <u>Camacho</u> noted that the key to the definition of unfairness was provided in <u>Cel-Tech</u> itself, which indicated that the Federal Trade Commission Act could be used as guidance.  <u>Id.</u> at 1403 (citing <u>Cel-Tech</u>, 20 Cal. 4th at 185).  Thus, <u>Camacho</u> adopted the third approach described above, reasoning that this definition of unfairness was relevant to consumers and comported with the broad scope of the UCL.  <u>Id.</u>  Several appellate courts and federal district courts have adopted <u>Camacho</u>'s reasoning and have applied the third definition of unfairness in UCL actions.  <u>See e.g.</u>, <u>Davis</u>, 179 Cal. App. 4th at 596-97; <u>Daugherty v. American Honda Motor Co., Inc.</u>, 144 Cal. App. 4th 824, 839 (2006); <u>Kilgore v.</u>

21

United States District Court
For the Northern District of California

Keybank, 712 F. Supp. 2d 939, 951-52 (N.D. Cal. 2010); Barriga v. JPMorgan Chase Bank, N.A., 2010 WL 1037870, *3 (N.D. Cal.). The Court is persuaded that the California Supreme Court would adopt the Camacho approach to unfairness, and thus applies it in this case.

### 3. Fraudulent Business Practice

"A fraudulent business practice is one in which members of the public are likely to be deceived." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1254 (2009). Claims premised on fraudulent lending practices must satisfy Rule 9(b). Tayaq, 2009 U.S. Dist. LEXIS at *6.

### B. Analysis

#### 1. Unlawful Business Practices

Plaintiffs do not allege claims based on a constitutional or regulatory violation and their three statutory claims have been dismissed. Thus, Plaintiffs fail to allege a constitutional, statutory or regulatory violation upon which an unlawful business practices claim can be predicated. In their opposition, Plaintiffs argue that their unlawful business practices claim is predicated on their breach of contract and breach of covenant claims. The Court has found that Plaintiffs have sufficiently plead these claims to the extent they are based on the oral loan modification agreement.

Ordinarily, a claim under the UCL's unlawful prong may not be based on common law, such as breach of contract. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1043-44 (9th Cir. 2010); National Rural Telecomms. Cooperative v. Directv, Inc., 319

22

United States District Court
For the Northern District of California

F. Supp. 2d 1059, 1074 (C.D. Cal. 2003).  However, a breach of contract may form the predicate for an unlawful business practices claim if it also constitutes conduct that is unlawful, unfair or fraudulent.  Arce v. Kaiser Found. Health Plan, Inc., 181 Cal. App. 4th 471, 489-90 (2010); Ansanelli, 2011 WL 1134451, at *9. One alleged breach of contract is insufficient to support such a claim; however, an allegation of a systematic breach of certain types of contracts can constitute an unfair business practice. Id.; American Marine Corp. v. Blue Shield of California, 2011 WL 1399244, *5 (N.D. Cal.).

Plaintiffs not only allege that Defendants breached their oral loan modification agreement, they also allege that Defendants "engaged in a pattern and practice of negotiating and approving loan modifications with borrowers, but later failing to provide the paperwork to conclude the modifications or denying their existence . . ., thereby causing homeowners to incur legal and late fees."  Comp. ¶ 78.  These allegations are sufficient to state a claim under the unlawful prong of the UCL.

2. Unfair Business Practices

To support their unfair business practices claim, Plaintiffs make a number of conclusory allegations.  Comp. at ¶ 270.  Only a few of the allegations apply specifically to Plaintiffs.  See Comp. at ¶¶ 188-204.  Plaintiffs sufficiently allege that Defendants: (1) breached their oral loan modification agreement; (2) did not inform them why they were rejected from the loan modification program; (3) after rejecting them from the loan modification program, increased their loan payments, presumably to

23

include late and delinquency fees; and (4) initiated foreclosure proceedings before the first modified loan payment was due.  Comp. at ¶¶ 188-204.  Plaintiffs allege they were injured by damage to their credit scores and by having to defend against a wrongful foreclosure proceeding.  Comp. at ¶ 204.

This claim fails under the Camacho test.  The alleged injuries suffered by Plaintiffs, a lowered credit score and having to defend against a wrongful foreclosure proceeding, even if caused by Defendants, could have been avoided if Plaintiffs had made timely mortgage payments.  See Camacho, 142 Cal. App. 4th at 1406 (even if plaintiff alleged he was injured, fact is that he could have avoided action taken by defendants by obtaining insurance as the law requires).

Therefore, Plaintiffs fail to state a claim under the unfairness prong of the UCL.

### 3. Fraudulent Business Practices

Plaintiffs' UCL claim based upon fraudulent business practices is dismissed because the allegations regarding these practices lack the required particularity.

Therefore, the UCL claim is dismissed in part.  Plaintiffs are granted leave to amend to cure the noted deficiencies, if they can truthfully do so.

## VIII. Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., prohibits a debt collector from engaging in abusive conduct in connection with collecting a debt.  See 15 U.S.C. § 1692d.  Examples of abusive behavior are the use or

threat of violence or harm to the person, reputation, or property of any person, or the use of obscene or profane language.  See 15 U.S.C. §§ 1692d(1) and (2).  A debt collector is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

This claim is based on the allegations that, when Defendants acquired CWS's assets, they assumed the responsibility of servicing CWS's loans, some of which were in default at the time of the acquisition, and, in collecting these defaulted loans, they engaged in a pattern and practice of filing false, deceptive, misleading and perjured affidavits in connection with foreclosure proceedings.

Defendants argue that Plaintiffs do not have standing to bring this claim because they do not allege that any such false or deceptive affidavits were filed in conjunction with their foreclosure.  Plaintiffs concede this fact, but argue that the filing of false and deceptive affidavits was so widespread that they expect that through the course of discovery they will uncover the use of fraudulent affidavits in connection with their foreclosure.  This is insufficient to establish standing.  Therefore, this claim is dismissed.  See In re Ditropan XL Antitrust Litig., 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (to demonstrate standing, named plaintiffs who represent a class must allege that they personally have been injured).

25

United States District Court
For the Northern District of California

Furthermore, Defendants are not debt collectors within the meaning of the FDCPA. The FDCPA applies to those who collect debts on behalf of another; it does not encompass creditors who are collecting their own past due accounts. Brooks v. Citibank (South Dakota), N.A., 345 Fed. Appx. 260, 262 (9th Cir. 2009). Plaintiffs cite Robbins v. Mortgage Elec. Reg. Sys. Inc., 2009 WL 3757443, *5 (W.D. Mich.), for the proposition that a mortgage servicing company is a debt collector if the mortgage at issue was in default at the time it was obtained. However, in Padgett v. OneWest Bank, FSB, 2010 U.S. Dist. LEXIS 38293, *43-47 (N.D. W. Va.), the court rejected the plaintiff's argument that the defendant became a debt collector by acquiring the plaintiff's loan when it was already in default because the defendant had not obtained the loan solely for the purpose of collecting the debt, but had stepped into the shoes of the original lender when that lender had failed as an institution. Similarly, Plaintiffs allege that Defendants acquired the assets of CWS when it collapsed due to the national financial crisis. Furthermore, Plaintiffs allege that their loan was not in default when it was acquired by Defendants. For this reason also, this claim must be dismissed. Dismissal is without leave to amend because amendment would be futile.

IX. RICO

Plaintiffs assert RICO claims under 18 U.S.C. § 1962(c) and (d). To state a claim for relief in a private RICO action, a plaintiff must allege four essential elements: (1) a pattern of racketeering activity, (2) the existence of an enterprise engaged

United States District Court

For the Northern District of California

in or affecting interstate or foreign commerce, (3) a nexus between the pattern of racketeering activity and the enterprise, and (4) an injury to its business or property by reason of the above. Sedima S.P.R.L. v. Imrex Company, Inc. et al., 473 U.S. 479 (1985).   Section 1962(c) prohibits engaging in a pattern of racketeering activity to conduct an enterprise affecting interstate commerce.  United States v. Robertson, 73 F.3d 249, 251 (9th Cir. 1996).  Section 1962(d) prohibits any person from engaging in a conspiracy to violate § 1962(c).  All allegations of fraud under the RICO statute must be plead with the particularity required by Rule 9(b).  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989).

Plaintiffs argue that they sufficiently allege a pattern of racketeering by claiming that Defendants defrauded the courts presiding over foreclosure proceedings by using perjured affidavits as well as engaging in mail and wire fraud by using mail, email and phone communications to file and serve complaints and other court documents facilitating their scheme.  However, Plaintiffs do not allege any perjured affidavits or scheme to defraud the court in connection with their foreclosure. Therefore, Plaintiffs lack standing to bring this claim.  See Ditropan, 529 F. Supp. 2d at 1107.  Furthermore, this claim is not stated with the required particularity.  Therefore, the RICO claim is dismissed with leave to amend to remedy the noted deficiencies, if Plaintiffs truthfully can do so.

CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is granted in part. The following claims are dismissed without leave to amend: breach of contract based on a binding settlement agreement; constructive fraud; negligence; and violation of the FDCPA. The following claims are dismissed with leave to amend: breach of contract based on the loan agreement; breach of the covenant of good faith and fair dealing based on the loan agreement; fraud and intentional and negligent misrepresentation; false advertising under § 17500; unfair competition under § 17200 based on fraudulent and unfair business practices and predicated on statutory violations that have been dismissed with leave to amend; and violation of RICO. The following claims are not dismissed: breach of the oral loan modification agreement; breach of the covenant of good faith and fair dealing based on the oral loan modification agreement; and an unlawful business practices claim under the UCL predicated on the systematic breach of loan modification agreements and the implied covenants therein. If Plaintiffs file an amended complaint, they must do so within two weeks from the date of this order. If they do not file an amended

/////

/////

/////

28

complaint within this time period, the claims that are dismissed
with leave to amend will be dismissed for failure to prosecute.

    IT IS SO ORDERED.


Dated: 8/15/2011

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

29