IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA LYONS and JERRY LYONS, on behalf of themselves and all others similarly situated, | No. C 11-1232 CW |
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE |
| v. | |
| BANK OF AMERICA, NA and BAC HOME LOANS SERVICING, LP, a wholly owned subsidiary of Bank of America, | |
| Defendants. | |

_____/

This case arises out of Plaintiffs Gina and Jerry Lyons' residential mortgage and related foreclosure by Defendants Bank of America, NA and BAC Home Loans Servicing (together, BOA). Defendants move to dismiss Plaintiffs' First Amended Complaint (1AC) and to strike, under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D), certain allegations in the 1AC. Plaintiffs have filed an opposition. The motions were taken under submission to be decided on the papers. Having considered all the papers filed by the parties, the Court grants in part Defendants' motion to dismiss, grants Defendants' motion to strike the class allegations under Rule 23(d)(1)(D) and grants in part Defendants' motion to strike under Rule 12(f).

The factual background is provided in the August 15, 2011 Order Granting in Part Defendants' Motion to Dismiss. In that order, the Court found three of Plaintiffs' claims to be

cognizable, dismissed several claims with prejudice and dismissed six claims with leave to amend. Plaintiffs timely filed their 1AC in which they allege six claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud; (4) negligent representation; (5) false advertising under California Business and Professions Code section 17500;[1] and (6) violations of California Business and Professions Code section 17200.

DISCUSSION

I. Motion To Dismiss

 A. Legal Standard

 A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere

---

 [1] Plaintiffs do not oppose Defendants' motion to dismiss their claim for false advertising under California Business and Professions Code section 17500. Therefore, the Court grants Defendants' motion to dismiss this claim.

United States District Court
For the Northern District of California

conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

B. Contract Claims

In the 1AC, Plaintiffs allege that Defendants breached three different contracts: (1) the original mortgage agreement; (2) an oral contract to enter into a loan modification agreement; and (3) the loan modification agreement.

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach.  Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004).  The prevention of performance by one party to the contract excuses performance by the other party.  Lortz v. Connell, 273 Cal. App. 2d 286, 290 (1969).

The formation of a contract requires an offer and acceptance. Brown v. California State Lottery Comm'n, 232 Cal. App. 3d 1335, 1339 (1991).  "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  Donovan v. RRL Corp., 26 Cal. 4th 261, 271 (2001). "The terms of an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a

binding contract."  <u>Marcus & Millichap Real Estate Inv. Brokerage</u>
<u>Co. v. Hock Investment Co.</u> 68 Cal. App. 4th 83, 89 (1998).

　　　　1. Breach of the Original Loan Agreement

　　In the August 15, 2011 Order, the Court dismissed this claim
because Plaintiffs had failed to allege that they were up-to-date
on their loan payments when Defendants initiated foreclosure
proceedings.  In their 1AC, Plaintiffs allege the following.  On
February 26, 2009, they were current on their loan payments when
they contacted Defendants to request a loan modification.  1AC
¶ 196.  Defendants instructed Plaintiffs that they would be
eligible for a loan modification only if they were three months in
arrears on loan payments.  1AC ¶ 197.  Plaintiffs told Defendants
that they did not want to default on their loan, but Defendants
said, a second time, that Plaintiffs would not be eligible for a
loan modification unless they were three months in arrears.  1AC
¶ 199-200.  In accordance with Defendants' instructions,
Plaintiffs did not make the next three payments on their loan.
1AC ¶ 201.  After three months, Plaintiffs attempted to make their
monthly payment, but Defendants would only accept payment for the
total owed for the three months plus late fees and would not
accept payment for one month.  1AC ¶ 202-03.  At the same time,
Plaintiffs applied for a loan modification from Defendants.  1AC
¶ 205.  Plaintiffs faxed to Defendants all the documentation
Defendants requested, but Defendants said, on multiple occasions,
that the documents were not received or were incomplete.  1AC

¶ 207-08.  During this time, Defendants made harassing collection calls to Plaintiffs about their unpaid loan payments, even though Plaintiffs were applying for a loan modification.  1AC ¶ 209.  On September 15, 2009, Plaintiffs received a Notice of Default from Defendants, and, on December 16, 2009, Plaintiffs received a Notice of Trustee's Sale set for April 20, 2010.  1AC ¶ 210-11.

These allegations are sufficient to state a claim for breach of the loan agreement because Plaintiffs claim that they attempted to perform under the loan agreement, but were thwarted by Defendants.

Defendants argue that these allegations are still insufficient to state a breach of contract claim because the deed of trust securing Plaintiffs' loan provides that forbearance or modification by the lender does not release the borrower from any obligations or constitute a waiver of the lenders' rights or remedies.  They characterize Plaintiffs' claim as an allegation that Defendants waived their right to collect the full amount of the loan.  However, Plaintiffs explain that their claim is that Defendants, by instructing Plaintiffs to stop making payments so that they would qualify for a loan modification, gave up any right to charge late fees and to foreclose during the time necessary to qualify for the modification.

Parties may, by their conduct, waive a provision in a contract where evidence shows that was their intent.  <u>Biren v. Equality Emergency Medical Gp., Inc.</u> 102 Cal. App. 4th 125, 141

(2002); <u>Olyaie v. General Elec. Capital Bus. Asset Funding Corp.</u>, 217 Fed. Appx. 606, 609 n.2 (9th Cir. 2007).  The allegations in the 1AC are sufficient to claim that Defendants intended to waive provisions in the deed of trust relating to late fees and foreclosure proceedings during the time that Plaintiffs were applying for a loan modification.

Therefore, Defendants' motion to dismiss this claim is denied.

### 2. Oral Agreement For Loan Modification

In the August 15, 2011 Order, the Court found that Plaintiffs had sufficiently alleged a claim for breach of an oral loan modification agreement.  Defendants request that the Court take a second look at this claim based upon two written documents they submit:  (1) Plaintiffs' July 6, 2010 application for the Home Affordable Modification Program (HAMP); and (2) an August 28, 2010 document informing Plaintiffs that they had been approved for the three-month trial period plan (TPP) under the HAMP.[2]  Defendants argue that the application indicates that the information Plaintiffs provide would be used to evaluate their eligibility for a loan modification, so that Plaintiffs were informed that there was no guarantee that they would receive a loan modification.

---

[2] Defendants request that the Court take judicial notice of the July 6, 2010 HAMP application and the August 28, 2010 TPP document.  The Court grants this request on the grounds that the 1AC refers to these documents, they are central to Plaintiffs' claim and no party questions their authenticity.  <u>See</u> <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006).

United States District Court
For the Northern District of California

Defendants' argument is unpersuasive.  Plaintiffs allege that they first spoke with Defendants regarding a loan modification in December, 2008 and that, on February 26, 2009, Defendants "instructed Plaintiffs that they would only be eligible for a loan modification if they were three months in arrears on mortgage payments."  1AC ¶ 197.  According to the 1AC, this was the start of a long process in which Plaintiffs complied with all of Defendants' requests in order to obtain the loan modification.  It was during this time that the parties entered into the oral loan modification agreement.  The HAMP application is dated July 6, 2010, over one year after Plaintiffs began the loan modification process.  Arguably, when Plaintiffs received the written HAMP application and the August 28, 2010 TPP agreement, they may have understood that Defendants were repudiating the alleged oral loan modification agreement.  However, the written documents do not disprove Plaintiffs' allegations that the parties earlier reached an oral agreement for a loan modification.

Therefore, Defendants' renewed motion to dismiss this claim is denied.

### 3. Written Loan Modification Agreement

In their 1AC, Plaintiffs allege that they entered into a "binding modification agreement" with Defendants which provided a modified payment schedule and, before Plaintiffs could make the first payment, Defendants increased the required payment to an amount that Plaintiffs could not afford.  1AC ¶¶ 254-56.  In their

opposition to the motion to dismiss, Plaintiffs clarify that the "binding modification agreement" allegation refers to the August 28, 2010 TPP agreement which, they argue, was a contract which Defendants breached.

Defendants argue that the August 28, 2010 document merely extended an offer to Plaintiffs to participate in the TPP and, because Plaintiffs did not accept it by making the modified payments, a contract was not formed.  Defendants' argument ignores Plaintiffs' allegations that, before the due date for the first payment, Defendants increased the amount due to a sum that Plaintiffs could not afford.  Plaintiffs allege that their payments under the original loan agreement were $3,033 per month.  Because they could not afford these payments, they sought a loan modification to reduce them.  The original TPP document set monthly payments of $2,463.78, which would have provided Plaintiffs with the relief they sought.  The first payment of $2,463.78 was due on October 1, 2010.  However, on September 7, 2010, almost an entire month before Plaintiffs were scheduled to make their first payment, Defendants increased the TPP payment to $3,666.10.  On September 13, 2010, Defendants increased the payment to the even higher amount of $3,824.14.

The TPP document states:

> We are pleased to tell you that you are approved to enter into a trial period plan under the Home Affordable Modification Program.  This is the next step toward qualifying for more affordable and sustainable mortgage

payments. . . . Remember, there are no fees associated with this program.

It also states:

> To accept this offer you must make new monthly "trial period payments" in place of your normal monthly mortgage payment.  Send in your monthly trial period payments . . . as follows:
>
> 1st payment:  $2,463.78 by   10/1/10
> 2nd payment:  $2,463.78 by   11/1/10
> 3rd payment:  $2,463.78 by   12/1/10

The first paragraph informed Plaintiffs that they were approved for the TPP.  It may be construed as a contract for a temporary loan modification.  The second paragraph could be read as an offer to enter into a permanent loan modification, which Plaintiffs could accept by sending in the $2,463.78 modified payments by October 1, 2010, November 1, 2010 and December 1, 2010.

Construction of the TPP agreement as a binding contract for a temporary loan modification is supported by Plaintiffs' allegations that they had been negotiating with Defendants for over one a half years for approval to enter the TPP and that they complied with all of Defendants' instructions in order to qualify for the TPP, including sending and resending financial information and allowing their loan to go three months into arrears.  See Ansanelli v. JP Morgan Chase Bank, N.A., 2011 WL 1134451, at *4 (N.D. Cal.) (plaintiffs' expenditure of time and energy to make financial disclosures in furtherance of the agreement, which they would have not been required to do under the original contract,

**United States District Court**
For the Northern District of California

constitutes consideration). The fact that Plaintiffs complied with all of Defendants' requests could be construed as an acceptance of the offer for the TPP and consideration. Thus, Defendants allegedly breached the TPP contract when, on September 7, 2010 and again on September 13, 2010, they increased the amount of the loan payments, excusing Plaintiffs' further performance. Under these circumstances, the Court concludes that Plaintiffs' allegations are sufficient to state a breach of contract claim. Defendants' motion to dismiss this claim is denied.

    C. Breach of the Covenant of Good Faith and Fair Dealing

    The implied covenant of good faith and fair dealing supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." <u>Waller v. Truck Ins. Exchange, Inc.</u>, 11 Cal. 4th 1, 36 (1995). The covenant thus prevents a contracting party from taking an action which, although technically not a breach, frustrates the other party's right to the benefit of the contract. <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1153 (1990). "Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." <u>Id.</u>

    As discussed above, Plaintiffs have successfully alleged that Defendants breached the original loan agreement, an oral loan modification agreement and the TPP agreement. The allegations in

the 1AC that, after Plaintiffs stopped making payments on their loan for three months to become eligible for Defendants' loan modification program, Defendants refused to accept monthly payments from Plaintiffs and initiated foreclosure proceedings, is sufficient to state a claim for breach of the implied covenant. Likewise, the allegation that Defendants breached the TPP agreement by raising the monthly payment to an amount they knew that Plaintiffs could not afford, is sufficient to state a claim for breach of the implied covenant of the oral agreement and the TPP agreement.

D. Fraud and Negligent Misrepresentation

In their original complaint, Plaintiffs alleged (1) that Defendants' statement that Plaintiffs had to be three months in arrears before they would be eligible for a loan modification was false, (2) that Defendants knew it was false but said it to induce Plaintiffs to default on their loan so Defendants would reap greater fees in the servicing of the loan, and (3) that Plaintiffs relied on Defendants' misrepresentation to their detriment. In the August 15, 2011 Order, the Court found that these allegations were insufficient to meet Rule 9(b)'s heightened pleading requirement because Plaintiffs failed to allege who made the statement, what was false or misleading about it and why it was false. The Court also found that Plaintiffs had not alleged justifiable reliance.

11

In their 1AC, Plaintiffs again allege that "Defendants instructed Plaintiffs that they would only be eligible for a loan modification if they were three months in arrears on mortgage payments."  1AC ¶ 197.  This allegation fails to state a claim for fraud and negligent misrepresentation for the same reasons given in the August 15, 2011 Order.  Plaintiffs' argument that they are not required to provide more specificity because the facts lie in the knowledge of the opposing party is unpersuasive.  The deficiencies are not merely by whom or when the allegedly fraudulent statement was made, but what was false about the statement and how Plaintiffs were justified in relying upon it.

Therefore, Defendants' motion to dismiss the fraud and negligent misrepresentation claims is granted.  Because Plaintiffs have been given an opportunity to amend these claims, dismissal is without leave to amend.

E. Unfair Competition Law

The California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Because section 17200 is written in the disjunctive, it establishes three types of unfair competition. Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 593 (2009). Therefore, a practice may be prohibited as unfair or deceptive even if it is not unlawful and vice versa.  Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996).

### 1. Unlawful Business Practices

In the August 15, 2011 Order, the Court found that Plaintiffs had stated an unlawful business practices claim based on the fact that they had stated a claim for breach of an oral loan modification agreement.  In the 1AC, Plaintiffs have also stated claims for breach of the original loan agreement and breach of the TPP agreement.  Under the reasoning in the August 15, 2011 Order, Plaintiffs state an unlawful business practices claim based on the breach of all three agreements.

### 2. Unfair Business Practices

In the August 15, 2011 Order, the Court adopted the unfair business practices standard enunciated in <u>Camacho v. Automobile Club of Southern California</u>, 142 Cal. App. 4th 1394, 1403 (2006), which applies three factors to determine if a practice is unfair: (1) the injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be one that the consumer could not reasonably have avoided.

The Court found that Plaintiffs had failed to state an unfair business practices claim because they could have avoided injury if they had made timely mortgage payments.  However, the allegations in the 1AC are that Plaintiffs were current on their mortgage payments when they temporarily stopped paying them to become eligible for a loan modification and that, when they tendered their monthly payments to Defendants once again, Defendants

rejected them.  Thus, Plaintiffs allegedly attempted to avoid injury but were thwarted from doing so by Defendants.  These allegations are sufficient to allege a claim under the unfairness prong of the UCL.

### 3. Fraudulent Business Practices

In the August 15, 2011 Order, the Court dismissed this claim because the allegations upon which it was based lacked the required particularity.  Plaintiffs have not remedied this deficiency.  Therefore, this claim is dismissed without leave to amend.

## II. Motion to Strike Under Rule 12(f)

### A. Legal Standard

Defendants move to strike the factual background allegations in the 1AC on the ground that they are generalized, conclusory allegations of wrongdoing that have no bearing on Plaintiffs' right to relief.  Plaintiffs argue that the factual background allegations are not scandalous or impertinent and are relevant to understanding how the mortgage-lending industry works.

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter."  The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).  Matter is immaterial if it has no essential or important relationship to the claim for

United States District Court
For the Northern District of California

relief plead.  Id.  Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case.  Id. Motions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.  Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  They should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.  Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

The Court finds that most of the factual background allegations are neither impertinent nor scandalous and denies the motion to strike on these grounds.  However, the following are not relevant to any of Plaintiffs' original or amended claims: (1) allegations regarding documenting and processing foreclosures, ¶¶ 23-49; and (2) allegations regarding Congressional hearings and reports, ¶¶ 101-92.  These allegations are stricken.  Defendants' motion to dismiss under Rule 12(f) is granted in part.

III. Motion to Strike Under Rule 23(d)(1)(D)

Defendants move, under Federal Rule of Civil Procedure 23(d)(1)(D), to strike the class allegations because Plaintiffs have failed to allege an ascertainable class.  Plaintiffs respond that they have clearly identified a class and reserve the right to redefine the class prior to a motion for class certification.

The granting of motions to strike class allegations before discovery and in advance of a motion for class certification is

15

rare.  Cholakyan v. Mercedes-Benz USA, LLC, __ F. Supp. 2d __,

2011 WL 2682975, *21 (C.D. Cal.).  However, the court has

authority to do so if the complaint demonstrates that a class

action cannot be maintained.  Tietsworth v. Sears, 720 F. Supp. 2d

1123, 1146 (N.D. Cal. 2010).  To constitute an ascertainable

class, class members must have suffered an injury, without which

they have no standing to sue.  Id. at 1146-47.

    Plaintiffs define their proposed class, in relevant part, as

follows:

> All persons who are or have been obligors on notes and/or
> mortgages, and/or whose spouses or domestic partners have
> been obligors on notes and/or mortgages, on property located
> in the United States serviced by BOA, and/or one of its named
> servicers within six years of the date of the original
> complaint.

1AC ¶ 232.

    Because the proposed class includes many members who have not

been injured, it is not certifiable.  The motion to strike the

class allegations on this ground is granted, with leave to amend.

CONCLUSION

    Based on the foregoing, Defendants' motion to dismiss is

granted in part.  The following claims are dismissed without leave

to amend: (1) fraud; (2) negligent misrepresentation; (3) false

advertising; and (4) unlawful competition based upon fraudulent

business practices.  The following claims have been found

cognizable: (1) breach of the original loan agreement, an oral

loan modification agreement and the TPP agreement; (2) breach of

United States District Court
For the Northern District of California

the implied covenant based on these contracts; and (3) unlawful

competition based on unlawful and unfair business practices.

Defendants' motion to strike under Rule 12(f) is granted in part

and their motion to strike under Rule 23(d)(1)(D) is granted.

Dismissal of the class allegations is with leave to amend.  If

Plaintiffs wish to amend the class allegations, they must file an

amended complaint within seven days from the date of this order.

A case management conference will be held on February 22, 2012 at

2 pm.

          IT IS SO ORDERED.


Dated: 12/16/2011                    _____
                                     CLAUDIA WILKEN
                                     United States District Judge